**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KIRIATH LUMPKIN, #85369** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:21-CV-1842-N (BH)** |
| | ) | |
| **KAUFMAN COUNTY SHERIFF'S** | ) | |
| **OFFICE, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the filings and applicable law, the plaintiff's claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

## I.  BACKGROUND

Kiriath Lumpkin (Plaintiff), a federal pretrial detainee at the Kaufman County Jail[2], sues the Kaufman County Sheriff's Office and Southern Health Partners as well as the Kaufman County Sheriff (Sheriff) Major Lori Compton (Major), Lieutenant Kevin Roe (Lieutenant), and an unidentified medical supervisor (Medical Supervisor), in their official capacities, based on the medical care he received at the jail. (doc. 3; doc. 12 at 5, 8, 10, 14-15.)[3]

Plaintiff alleges that Sheriff was negligent and failed to solve his "situation." (*Id.* at 5.) He also alleges that "they" only gave inmates the "the mop bucket" to clean their cells once a day and violated a court order mandating that inmates be given new face coverings on a weekly basis. (*Id.*)

Lieutenant allegedly failed to "solve" Plaintiff's grievances related to (1) his treatment as

---

[1]  By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening.

[2]  In December 2020, Plaintiff was named in a two-count indictment in the Northern District of Texas, Dallas Division. *See United States v. Lumpkin et al.*, 3:20-cr-00599-S (doc. 1) (N.D.Tex.). In September 2022, he plead guilty and is currently awaiting sentencing. (*See id.* at docs. 70-73.)

[3]  Citations to the record refer to the CM/ECF system page number at the top of each page.

a federal inmate in a state prison; (2) harassment; (3) his lack of recreation and separation from other inmates; (4) his medication being "crushed"; (5) "styrofoam trays and small proportions"; (6) "molded mates"; (7) being targeted everyday as a "federal inmate"; (8) not having shower curtains; (9) being put in a tank that does not have a camera; (10) only getting the mop bucket once a day and sometimes getting a bleach rag; (11) the inmates' clothes "sometimes" being wet, lost, or misplaced on laundry day; (12) officers "going through" inmates' legal paperwork; (13) officers sometimes confiscating inmate property; and (14) cold food. (*Id.* at 11-13.)

Plaintiff complains that Major did not solve his grievances related to a "picture being terminated" and his medical files. (*Id.* at 8.)

Plaintiff also complains that the prison has a policy that inmates can only keep ten picures in their cell (with the rest going into the inmates' "property"), officers copied his incoming and outgoing mail, he was sentenced to twenty-three days in administrative segregation, and he was shackled during visits. (doc. 3 at 1.)

As for medical care, Plaintiff claims that Southern Health Partners, Medical Supervisor, and Major, or some combination thereof, were negligent and deliberately indifferent to his serious medical needs. (doc. 12 at 6, 14-17.)[4] He contends that he came from the Dallas County Jail with a broken finger and that Southern Health Partners and the "medical team" failed to moniter it. (*Id.* at 6, 14.) He alleges that he had to "put in several Kites or grievances" to get pain medications and an x-ray, was given 14 pills for a 30 day period, was charged $10 for an x-ray, was given a substitute pill for nerve pain when he should have been given another medication, was forced to get pills through the commissary, was given another inmate's medications, and had his blood pressure

---

[4] It is unclear whether Medical Supervisor is employed by Kaufman County or Southern Health Partners.

checked only once, and that "they" were unable to tell him about the side effects of the medication

he was given, the Kaufman County Jail is not equipped with the correct medical staff or equipment

and, "they" have still not told him if his finger has healed correctly. (*Id.* at 14-17.)

## II.  PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma paueris*. As a prisoner

seeking redress from a govenmental entity or an officer or employee of a governmental entity, his

complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156

F.3d 578, 579-80 (5th Cir. 1998) (per curium). Because he is proceeding *in forma pauperis*, his

complaint his also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915(A)(b)

provide for *sua sponte* dismissal of the complaint, or of any part of it, if the Court finds it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary

relief against a defendant who is immune from such relief.

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an

indisputably meritless legal theory." *Id.* at 327. A claim fails to state a claim upon which relief may

be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).

## III. SECTION 1983

Plaintiff is suing state actors for alleged violations of his constitutional rights, so his claims

arise under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation,

under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and

laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### A.    Kaufman County Sheriff's Office

Plaintiff is suing the Kaufman County Sheriff's Office. (doc. 12 at 2.) The Kaufman County Sheriff's Office is a nonjural entity that is not amendable to suit, however. *See*, *e.g.*, *Marshall v. Abbott*, No. 4:21-CV-384-SDJ-CAN, 2022 WL 671009, at *3 (E.D. Tex. Feb. 4, 2022), *rec. accepted* 2022 WL 659159 (E.D. Tex. Mar. 4, 2022) ("The Eastern District of Texas and numerous other federal courts in Texas have repeatedly and consistently held that a county Sheriff's Office is a nonjural entity that is not amendable to suit.") (collecting cases); *see also Thomas v. Harris Cnty. Sheriff's Dep't*, No. H-18-1800, 2019 WL 1201984, at *2 (S.D. Tex. Mar. 14, 2019) ("the Sheriff's Department lacks capacity and is not subject to suit"); *Phillips v. Dallas Cnty. Sheriff's Dep't.*, No. 3:16-CV-2680-D, 2017 WL 658749, at *2 (N.D. Tex. Jan. 12, 2017) (concluding that the Dallas County Sheriff's Department is a nonjural entity under § 1983).

Plaintiff's claims againt the Kaufman County Sheriff's Office should be dismissed.

### B.    Official Capacity Claims

Plaintiff sues Sheriff, Lieutenant, Medical Supervisor, and Major in their official capacities

only. (*See* doc. 12 at 5, 7, 8, 10).[5] Official-capacity suits generally represent..."another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690, n.55 (1978). Suits against the Kaufman County Sheriff—as well as suits against other officials of the Kaufman County Jail such as Lieutenant, Major, and Medical Supervisor (if he or she is a county employee)—are treated as suits against Kaufman County. *See Bumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008).

Municipalities, including counties, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under [§] 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

1.    A policy statement, ordinance, regulation, or decision that is officially adopted and

---

[5] It is unclear whether Medical Supervisor is sued in his or her official or individual capacity or whether, as noted, this individual was employed by the County. Because Plaintiff sued all other defendants in their official capacities, his claims against Medical Supervisor are construed in the same manner. Regardless, as discussed below, the end result is the same because he has failed to plausibly allege Medical Supervisor was deliberately indifferent to his serious medical needs.

promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

"When attributing violations of pretrial detainees' rights to municipalities, the cause of those violations is characterized either as a condition of confinement or as an episodic act or omission." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)).[6] Condition of confinement cases are attacks on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. "Prior conditions cases have concerned durable restraints or impositions on inmates' lives like

---

[6] While "[t]he standard is the same as that for a prisoner under the Eighth Amendment," § 1983 claims brought on behalf of pretrial detainees invoke the protections of the Fourteenth Amendment. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020). Thus, to the extent that Plaintiff brings seperate Eighth Amendment claims, they should be dismissed.

overcrowding, deprivation of phone or mail privileges, the use of disciplinary segegation, or excessive heat." *Garza*, 922 F.3d 626, 633-34 (5th Cir. 2019). Episodic-acts-or-omissions cases, on the other hand, seek to redress harms arising from the "particular act or omission of one or more officials," rather than harms that result directly from an unconstitutional policy, practice, or rule of the institution. *Id.* at 632 (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). "Whereas conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." *Feliz v. El Paso Cnty.*, 441 F.Supp.3d 488, 497 (W.D. Tex. 2020) (citing *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 466-67 (5th Cir. 2015)).

### 1.    Conditions-of-Confinement Claims

Because pretrial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment of the detainee" are unconstitutional. *See Cadena*, 946 F.3d at 727 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." *Garza*, 922 F.3d at 632 (quoting *Bell*, 441 U.S. at 539). "That is, in order to prevail on a conditions-of-confinement claim, a plaintiff does not need to show that any individual state actor or municipal entity acted knowingly or intentionally." *Feliz*, 441 F.Supp.3d at 498 (citing *Estate of Henson*, 795 F.3d at 463).

"Absent an established rule, a jail condition claim exists only where there is 'extended or pervasive misconduct,' establishing a pattern, which the Fifth Circuit has recognized is a 'heavy burden' that has rarely been met in its caselaw." *Tiede v. Salazar*, 518 F.Supp.3d 955, 964 (W.D.

Tex. 2021) (citing *Hare*, 74 F.3d at 645; *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009)). "Isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate...Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for basic human needs." *Duvall v. Dallas Cnty.*, 631 F.3d 203, 208 (5th Cir. 2011) (citation omitted). To succeed on a conditions-of-confinement claim, a plaintiff must prove: (1) a rule or restriction or the existence of an identifiable intended condition or practice or that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of the inmate's constitutional rights. *Id.* at 207.

Plaintiff contends that the ten-picture limit is a problem because he has pictures coming in constantly and does not get to see most of them. He has not alleged that this rule lacks a reasonable relation to a legitimate governmental objective, however. *See, e.g.*, *Mayes v. Valdez*, No. 3:15-CV-3424-M-BH, 2017 WL 4075184, at *6 (N.D.Tex. Aug. 21, 2017), *rec. accepted* 2017 WL 4022890 (N.D. Tex. Sept. 13, 2017). Moreover, "prisoners do not have a constitutional right to maintain an unlimited amount of property in their cells." *Good v. Goodell*, Case No. 2:19-cv-222, 2020 WL 880956, at *9 (W.D. Mich. Feb. 24, 2020) (citing *Friend v. Chapleau*, No. 95-5628, 1995 WL 607835, at *2 (6th Cir. Oct. 13, 1995) (holding that the defendant did not have a constitutional right to possess unlimited amounts of legal property); (*Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property); *Cosco v. Uphoff*, 195 F.3d 1221,

1224 (10th Cir. 1999) ("The regulation of type and quantity of individual possession in cells is typical of the kinds of prison conditions that the Court has declared to be subject to the...analysis set forth in *Sandin v. Conner*, 515 U.S. 472, 484 (1995)].")) (further citation omitted).

Because Plaintiff alleges that he could keep additional pictures in his "property,"(doc. 3 at 1), a limitation of the amount of pictures he could possess "on person" does not raise constitutional concerns. He fails to state a conditions-of-confinement claim in relation to the picture limit.[7]

### 2.    Episodic-Acts-or-Omissions

To establish municipal liability in an episodic-acts-or-omissions case, a plaintiff must show "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-29 (5th Cir. 1999)).

The requirement of subjective deliberate indifference in the first element "means that 'the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.'" *Olabisiomotosho*, 185 F.3d at 526 (citing *Hare*, 74 F.3d at 650). The applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk. *See Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 847).

---

[7] Except for his claim that inmates are only allowed to keep ten pictures in their cells with the rest going into their property, Plaintiff offers little factual detail regarding the conditions about which he complains; he has not alleged enough to show that the conditions amount to the kind of "extended or pervasive misconduct" that establish a pattern in the absence of an established rule. *See, e.g.*, *Shepherd*, 591 F.3d at 452 (citation omitted). Those complaints are therefore analyzed as episodic-acts-or-omissions.

As for the second requirement that the violation "resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference," a policy or custom may be attributed to a municipal defendant through the identification of a final policymaking authority. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Identification of an official as a final policy making authority is a question of state and local law. *Praprotnik*, 485 U.S. at 124. Generally, county sheriffs are final policymakers in matters of county prisons. *See*, *e.g.*, *Baughman v. Garcia*, 254 F.Supp.3d 848, 887 (S.D. Tex. 2017) (citing TEX. LOC. GOV'T CODE §§ 351.041(a)-(b)). As discussed, a plaintiff must show a policy or custom that was the moving force for the episodic acts or omissions of the jail employees, which can take the "form of written policy statements, ordinances, or regulations" or "a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). It can also be a decision to adopt a course of action to handle a particular situation, if made by an authorized decisionmaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Finally, unlike the subjective deliberate indifference standard applied to the conduct of the individual officers, "[t]he objective deliberate indifference standard 'considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [pretrial detainee's] rights.'" *Brumfield*, 551 F.3d at 331 (alteration in original) (quoting *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)).

### a.    Policy or Custom

Here, Plaintiff fails to allege that any purported constitutional violation resulted from a

municipal policy or custom adopted and maintained with objective deliberate indifference. He alleges no written "policy statement[], ordinance, or regulation" or a practice so widespread as to amount to a custom representing municipal policy. *James*, 577 F.3d at 617. For that reason, he has failed to allege that any episodic-act-or-omission claim is fairly attributable to Kaufman County.

### b. Subjective Deliberate Indifference

Nor has Plaintiff plausibly alleged that any municipal employee was subjectively deliberately indifferent to a substantial risk of serious harm that he was facing.

### i. *Sheriff*

As for Sheriff, "[a]ny alleged negligence, even if it caused an unintended injury, did not violate Plaintiff's constitutional rights." *Gibbs v. Tanner*, Civil Action No. 3:17-CV-2351-L-BH, 2020 WL 2950769, at *6 (N.D. Tex. Apr. 9, 2020), *rec. accepted* 2020 WL 2908567 (N.D. Tex. June 2, 2020) (citing *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 635 (5th Cir. 1999)) (holding that negligence by state officials does not constitute a constitutional violation) (further citation omitted). "Plaintiff's allegations of negligence are insufficient to impose liability under § 1983." *Id.* (citing *Brumfield*, 551 F.3d at 333 (5th Cir. 2008); (*Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)).

To the extent that Sheriff is included in Plaintiff's claim that unspecified defendants violated a court order by not giving the inmates new face coverings every week, (doc. 12 at 5), Plaintiff does not detail the conditions at the Kaufman County Jail or show a substantial risk of serious  harm if the inmates did not get new face covering every week. Courts have rejected failure-to-provide-face-covering claims in the absence of such detail. *See, e.g.*, *Monroe v. Jouliana*, 20 CV 6807 (VB), 2021 WL 6052162, at *4 (S.D.N.Y. Dec. 20, 2021) (rejecting the plaintiff's conditions-of-confinement

11

claim where he failed to adeqautely "plead necessary facts regarding the conditions at RCCF to properly evaluate the risk of harm to plaintiff by not wearing a mask") (citing *Montes v. O'Shea*, 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *8 (N.D.N.Y. Apr. 6, 2021)) (allegations of unsanitary conditions at a prison, standing alone, failed to rise to the level of objective harm); *Cf. Perez v. Barone*, CASE NO. 3:20-cv-1261 (MPS), 2021 WL 538130, at *3 (D. Conn. Feb. 15, 2021) (plaintiff plausibly alleged that denial of N-95 mask while confined in a single cell with another inmate posed a serious risk of harm from COVID-19).

Next, Plaintiff claims that Sheriff did not "answer [the] situation" or fully solve it. (doc. 12 at 5.) Plaintiff never alleges that Sheriff had involvment with—much less knowledge of—any  of the litany of episodic-act-or-omissions that he complains about, including the allegation that inmates were given the mop bucket only once a day.  He therefore does not plausibly allege that Sheriff was subjectively deliberately indifferent.

### ii.    Lieutenant

Plaintiff claims that Lieutenant failed to resolve his grievances related to: (1) his treatment as a federal inmate in a state prison; (2) harassment; (3) his lack of recreation and seperation from other inmates; (4) his medication being "crushed"; (5) "styrofoam trays and small proportions"; (6) "molded mates"; (7) being targeted everyday as a "federal inmate"; (8) not having shower curtains; (9) being put in a "tank" that does not have a camera; (10) only getting the mop bucket once a day and sometimes getting a bleach rag; (11) that his clothing was "sometimes" wet, lost or misplaced on laundry day; (12) officers "going through" inmates' legal paperwork; (13) officers sometimes

confiscating prisoner property; and (14) cold food. (doc. 12 at 11-13).[8]

Plaintiff fails to state an episodic-acts-or-omissions claim because it not clear that any of the conditions of which he complains posed a substantial risk of serious harm to him so as to satisfy the objective prong of the deliberate indifference analysis. He does not explain how he was harrassed or how the prison's failure to afford him special treatment as a federal inmate, crushing his medication, or failure to give him more recreation time posed a substantial risk of serious harm. *See*, *e.g.*, *Umondal v. Ginsel*, 426 F. App'x 267, 269 (5th Cir. 2011) (per curiam) (rejecting conditions-of-confinement claim related to 25-day deprivation of out-of-cell recreation); *see also Mejia v. Ramirez*, Civil Action No. 2:14-CV-238, 2016 WL 11473812, at *8 (S.D. Tex. Feb. 11, 2016), *rec. accepted* 2016 WL 3661902 (S.D. Tex. July 11, 2016) ("To succeed on a claim for lack of exercise, Plaintiff must provide facts that 'support the existence of any health hazard under the specific circumstances involved.'") (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir.), *amended in part, vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)). Nor does he offer any factual detail regarding his allegations about small food portions, and access to "molding mates."

As for his claim of cold food, this does not establish a constitutional violation. *See*, *e.g.*, *Hmeid v. Nelson Coleman Corr. Ctr.*, CIVIL ACTION NO., 18-3449, 2018 WL 4922381, at *13 (E.D. La. Aug. 15, 2018), *rec. accepted* 2018 WL 4909898 (E.D. La. Oct. 10, 2018) ("As to his complaints about cold food, Constitutional standards require only that prison authorities provide an inmate with 'sufficient nutritional value to preserve health.'") (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986); *Smith v. Sullivan*, 553 F.2d

---

[8] To the extent that Plaintiff is alleging a violation of due process related to a failure of Lieutenant to investigate and satisfactorily resolve his grievances, he "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Giddings v. Valdez*, Civil Action No. 3:06-CV-2384-G, 2007 WL 1201577, at *3 (N.D. Tex. Apr. 24, 2007) (same).

373, 380 (5th Cir. 1977)).

As for his complaint that his cell was unsanitary due to only getting the mop bucket once a day, "filthy, unsanitary" cells can pose a substantial risk of serious harm to a prisoner. *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). The Fifth Circuit, for example, has found that unsanitary living conditions amounted to cruel and unusual punishment in violation of the Eighth Amendment where "a wall was almost completely covered in black mold," and urine and feces. *See Hope v. Harris*, 861 F. App'x 571, 584 (5th Cir. 2021) (per curiam). In *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991), the Fifth Circuit found a violation where a prisoner was forced, for a ten-month period, to sleep on a wet mattress "in filthy water contaminated with human waste." *See also Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (finding unconstitutional conditions of confinement where prisoners lived in cells covered with "crusted fecal matter, urine, dried ejaculate, peeling and chipping pant, and old food particles").

Plaintiff's allegations may be distinguished from those in *Hope*, *McCord*, and *Gates*. That he was given daily access to cleaning supplies militates against a constitutional violation. *See*, *e.g.*, *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) ("Furthermore, cleaning supplies were made available to Davis, mitigating any intolerable conditions.") (citations omitted). He has not plausibly alleged that his living conditions were so unsanitary as to pose a substantial risk of serious harm.

As for the lack of shower curtains, Plaintiff claims that this led to standing water in which he slipped. The Fifth Circuit has characterized standing water leading—or having the potential to lead to—slip-and-fall accidents as a matter of negligence and not deliberate indifference. *See*, *e.g.*, *McLaughlin v. Farries*, 122 F. App'x 692, 693 (5th Cir. 2004) (per curiam) (finding that inmate's slip-and-fall claim due to accumulated water on the floor was, at most, "a claim of negligence, which

is not actionable under 42 U.S.C. § 1983") (citing *Marsh v. Jones*, 53 F.3d 707, 711-712 (5th Cir. 1995)) (inmate's claim stemming from a slip-and-fall due to a leaky air conditioning unit not actionable under § 1983).

As to the claim that his cell did not have a camera, Plaintiff does not allege any facts showing that this condition posed a substantial risk of serious harm to him. When asked whether he sustained an injury because he was in a cell without a camera, he referenced the standing water issue. (doc. 12 at 9.)

As for Plaintiff's claims concerning his laundry, an inmate is entitled to adequate clothing while in prison. He does not claim that the wet or missing thermal top and sock were the only clothes that he had; it is not evident from his allegations why the loss of those clothes rendered his clothing situation inadequate as a constitutional matter.[9]

### iii.    Medical Supervisor

Plaintiff claims Medical Supervisor is liable for failing to monitor and provide sufficient treatment related to his broken finger. (doc. 12 at 14.) Specifically, he complains that he had to "put in several Kites or grievances just to get pain" medications and an x-ray, he was given 14 pills for

---

[9] Plaintiff also alleges that Lieutenant failed to remedy other problems that do not fit neatly in the subjective-deliberate-indifference framework because they do not involve a substantial risk of serious harm. He complains that sometimes officers confiscate prisoner property. The Fourteenth Amendment protects inmates from being deprived of their property without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). A state actor's unauthorized deprivation of prisoner property "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," however. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Fifth Circuit has long recognized that Texas provides inmates with meaningful postdeprivation remedies, either through statute or through the tort of conversion. *Washington v. Collier*, 747 F. App'x 221, 222 (5th Cir. 2018) (per curiam) (collecting cases). Plaintiff's allegation that officers sometimes confiscated inmate property, without more, fails to state a claim against Kaufman County. Finally, although he claims that officers sometimes went through the inmates' legal paperwork, he does not specify whether this was done in the inmates' presence, or if it was done to him at all. Notably, "[t]he opening of incoming legal mail outside an inmate's presence for the purpose of inspecting for contraband does not violate a prisoner's constitutional rights." *Clemons v. Monroe*, 423 F. App'x 362, 363 (5th Cir. 2011) (per curiam) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993)).

a 30 day period, he was charged $10 for an x-ray, he was given a substitute pill for nerve pain when he was supposed to be taking another medication, "they" were unable to tell him about the side effects of the medication he was given, he was forced to get pills through the commissary, he was given another inmate's medications, his blood pressure was only checked once, the Kaufman County Jail is not equipped with the correct medical staff or equipment, and "they" have still not told him if his finger has healed correctly. (*Id.* at 14-17.)

"The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citing *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)) (further citations omitted). To show deliberate indifference, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Plaintiff mostly complains about the type and frequency of the treatment that he received, characterizing it as negligent. (doc. 12 at 14-15.) Complaints that medical treatment was negligent or disagreements with the course of treatment, including its frequency, are insufficient to state a medical indifference claim. *See*, *e.g.*, *Gobert*, 463 F.3d at 346; *see also Evans v. Lopinto*, CIVIL ACTION NO. 18-8972, 2022 WL 1748356, at *11 (E.D. La. May 31, 2022) ("Plaintiff's claims

16

against Dr. Lo as to the frequency, location, and method of treatment are 'classic example[s] of a matter for medical judgment' which are not sufficient to establish a claim for deliberate indifference.") (citing *Dryer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020)); *Adams v. Nolen*, 2009 WL 57104, at *4 (E.D. Tex. Jan. 2, 2009) ("[T]he fact that medical care given is not the best that money can buy...does not amount to deliberate indifference to serious medical needs.").

Plaintiff also appears to complain of a delay in treatment—claiming that it took multiple grievances before he received treatment. For a delay in treatment to amount to deliberate indifference, the plaintiff must show that the delay in treatment resulted in substantial harm. *Gaines v. U.S.*, 498 F. App'x 415, 417 (5th Cir. 2012) (per curiam) (citing *Easter v. Powell*, 467 F.3d 459, 463-65 & n.25 (5th Cir. 2006)). He has not alleged that here.

Finally, Plaintiff complains that he had to buy some medications at the commissary, which is not, in and of itself, unconstitutional. *See*, *e.g.*, *Ketron v. Sullivan Cnty. Jail Medical Dept.*, No. 22-CV-83-DCLC-CRW, 2022 WL 2826197, at *2 (E.D. Tenn. July 19, 2022) ("Despite Plaintiff's protestations, he does not have a constitutional right to free medical care where he is able to contribute to that care.") (citing *White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay.") (citation omitted). He does not allege that he has been denied any necessary medical treatment based on his inability to contribute to his treatment, and the fact that he may sometimes be forced to consider whether to seek medical care because he will have to remit payment for medical services does not implicate the Constitution. *See id.*

Plaintiff has not plausibly alleged that Medical Supervisor was deliberately indifferent to his serious medical needs.

#### iv.    Major

Plaintiff claims that Major did not solve "problems" that were brought to her attention. (doc. 12 at 8.) He never says what problems he disclosed, however, so he does not plausibly allege that she was deliberately indifferent to a substantial risk of serious harm. His vague complaints that he submitted a grievance about a picture being "terminated" and that Major failed to satisfy his "medical files demand" do not demonstrate that he faced a substantial risk of serious harm. Plaintiff has not plausibly alleged that Major was deliberately indifferent.

Finally, although Plaintiff also claims that Major was involved in his medical treatment, as discussed above, he fails to plausibly allege deliberate indifference in relation to his medical care.

Plaintiff fails to plausibly allege that Major was deliberately indifferent to a substantial risk of serious harm.

#### v.    Other Complaints

Plaintiff also complains that unidentified officers copied his mail, that he was sentenced to 23-days in administrative segregation, and that he was shackled during visits. (doc. 3 at 1.)

Inmates enjoy a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a prison or jail may adopt regulations or practices that impinge on a prisoner's First Amendment rights, including rights regarding mail, if those regulations are "'reasonably related to legitimate penological interests.'" *Id.* at 404 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Because "freedom from censorship is not equivalent to freedom from inspection or perusal," prison officials have the right to open and to inspect a prisoner's incoming and outgoing mail—even legal mail from attorneys or from inmates to attorneys. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). While a prisoner's legal mail enjoys more protection, courts have upheld the ability

of prisons to inspect and even copy a prisoner's nonlegal mail. *See, e.g.*, *Smith v. Long*, No. 3:19-cv-00061, 2018 WL 3831394, at *7 (M.D. Tenn. Aug. 13, 2018) (finding that jail officials did not violate the plaintiff's constitutional rights by opening and inspecting his non-privileged incoming mail and noting that "it is well established that prison officials do not commit a constitutional violation by opening, inspecting, and even copying prisoners' non-privileged outgoing mail") (collecting cases); *Thongvanh v. Thalcker*, 17 F.3d 256, 258-59 (8th Cir. 1994) (noting that prison officials have a duty to maintain security in the prison and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail); *Stockdale v. Dwyer*, NO. 06-cv-25 CAS, 2007 WL 2994316, at *8 (E.D. Mo. Oct. 11, 2007) ("The constitutional protection for legal mail only extends to genuine legal mail, as an inmate has no constitutional right to prevent prison officials from opening or inspecting nonlegal mail.").

Plaintiff does not claim that the mail that was copied was legal in nature; he hints that it was sent to family members. (*See* doc. 3 at 1.) Because prison officials do not violate a prisoner's First Amendment rights by inspecting and copying nonlegal mail, this claim is meritless.

Plaintiff also complains that he was sent to administrative segregation for twenty-three days. (doc. 3 at 1.) Solitary confinement is not *per se* unconstitutional. *See, e.g.*, *Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974). He does not describe any aspects of his confinement in administrative segregation, so he has failed to show that there was anything about it that might place him at a substantial risk of serious harm, much less that anyone knew of that risk.

Finally, there is not a *per se* prohibition against forcing an inmate to wear shackles during visitations. *See, e.g.*, *Sanders v. Van Doran*, C.A. No. 8:08-3546-PMD, 2009 WL 82498, at *4 (D.S.C. Jan. 9, 2009) (rejecting pretrial detainee's claim that he was forced to wear leg shackles

during visitation hours because he was a higher security risk inmate, which justified the use of shackles) (citing *Jones v. Mabry*, 723 F.2d 590 (8th Cir. 1983)) (forcing inmates in high security risk category to wear leg irons and shackles outside of their cells did not constitute the imposition of cruel and unusual punishment). Plaintiff fails to allege any facts showing that the use of shackles was problematic in his case.

Plaintiff has failed to allege a plausible episodic-acts-or-omissions claim or any other type of claim against Sheriff, Lieutenant, Medical Supervisor, or Major in their official capacities.

## C.    Southern Health Partners

Plaintiff claims that Southern Health Partners was negligent and deliberately indifferent to his serious medical needs. It is unclear from Plaintiff's allegations whether Southern Health Partners is a private or public entity.  Even if Southern Health Partners is a private entity that contracted with Kaufman County to provide medical services at the county jail, it should be treated as a state actor under § 1983. *See*, *e.g.*, *Belcher v. Lopinto*, 492 F.Supp.3d 636, 647 n.21 (E.D. La. 2020) ("As a private corporation contracted to operate the medical services in JPCC, the company and its employees are subject to liability as state actors under § 1983.") (citation omitted). To hold a private entity that contracted to provide prison medical services directly liable under § 1983, a plaintiff must show (1) "an official policy (or custom)," (2) that "a policy maker can be charged with actual or constructive knowledge," and (3) "a constitutional violation whose 'moving force' is that policy (or custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (citations omitted); *see also Cadena v. El Paso Cnty.*, EP-16-CV-00209-FM-RFC, 2017 WL 11621477, at *17 (W.D. Tex. Dec. 19, 2017), *rec. accepted* 2018 WL 11337662 (W.D. Tex. Mar. 26, 2018) ("Consequently, liability against a private corporate defendant under Section 1983 requires proof of 'a policymaker,

an official policy [or custom], and violation of a constitutional right whose moving force is the policy [or custom], and a violation of a constitutional right whose 'moving force' is the policy or custom.") (quoting *Piotrowski*, 237 F.3d at 578) (internal quotation marks omitted).

Plaintiff has not provided anything to make the required showing. As with his official-capacity claims, he fails to identify any policy or custom of Southern Health Partners that caused his injury. As discussed in more detail above, Plaintiff has also not plausibly alleged medical indifference, so there is no underlying constitutional violation. His claims against Southern Health Partners should be be dismissed.

## IV.  STATE LAW CLAIMS

Liberally construing his pleadings, Plaintiff sues Medical Supervisor and Southern Health Partners for medical malpractice under state law. (doc. 12 at 14-15.) Under 28 U.S.C. § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore*

*Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[10] This rule is

"neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002)

(citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise

jurisdiction under such circumstances. *See Heaton*, 231 F.3d at 997; *Noble v. White*, 996 F.2d 797,

799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a

doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should

consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*,

805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346

(5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law medical

malpractice claim because it arises from the same "common nucleus of operative facts" as his

federal claims against Medical Supervisor and Southern Health Partners. Requiring Plaintiff to

litigate his claim in state court would "necessarily require consideration by two distinct courts of the

same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Further,

because Plaintiff's claims are meritless for the reasons discussed below, allowing him to file suit in

state court would impose unnecessary expenses on the court system and the parties involved. *See*

---

[10]  Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

>   (1) the claim raises a novel or complex issue of law,
>
>   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>   (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

*McCall v. Peters*, No. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 11, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendant or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating a case).

Turning to the merits of the medical malpractice claim, under Texas law, medical malpractice claims require the showing of (1) a duty by the physician or hospital to act according to the applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (stating the elements when "the negligence alleged is in the nature of medical malpractice") (citing *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.–Texarkana, 1999, no pet.))

Plaintiff fails to plausibly allege a medical malpractice claim. He does not allege that Medical Supervisor or Southern Health Partners deviated from the appropriate standard of care; he merely lists his complaints about the treatment that he received. Nor does he appear to allege any injury that was caused by his medical care, which is fatal to his malpractice claim. *See*, *e.g.*, *Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (citing *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)) (listing elements of Texas medical malpractice claim, including injury).[11]

## V. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at

---

[11]  It is not clear whether Plaintiff is also suing Major for medical malpractice under state law. To the extent that he is, his allegations are duplicative of those against Southern Health Partners and Medical Supervisor and fail for the same reasons as discussed above.

*1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint."). Here, Plaintiff has responded to a questionnaire and has had an opportunity to plead his best case. Further leave to amend is not warranted.

## VI. RECOMMENDATION

Plaintiff's claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

**SO RECOMMENDED** on this 15th day of March, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE